## PELHAM v. WAY.

When, under the act of July 17th, 1862, "to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," the libel and monition have been framed in such a way, and the marshal has served his process in such a way, that notwithstanding the completion of the proceeding and a sale in form, *intended* to divest the rebel of his property, the property has not, after all, been divested in law, and the rebel's rights remain uninjured, he cannot in an action against the marshal for a false return recover more than nominal damages.

ERROR to the Circuit Court of the United States for the District of Indiana.

An act of Congress, approved July 17th, 1862, and entitled "An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," among other things, provided, "that if any person within any State or Territory of the United States other than those named as aforesaid after the passage of this act, being engaged in armed rebellion against the government of the United States, or aiding or abetting such rebellion, shall not, within sixty days after public warn-

---

* 8 Wallace, 603.

ing and proclamation duly given and made by the President of the United States, cease to aid, countenance, and abet such rebellion, and return to his allegiance to the United States, all the *estate, property*, money, stocks, and *credits* of such person, shall be liable to seizure as aforesaid, and it shall be the duty of the President to seize and use them as aforesaid, or the proceeds thereof;" and further, "that to secure the condemnation and sale of any such property, proceedings *in rem* shall be instituted in the name of the United States," in the District Court; and that the proceeding shall conform as nearly as may be to proceedings in admiralty and revenue cases; " and if said property, whether real or personal, shall be found to have belonged to a person engaged in rebellion, or who has given aid or comfort thereto, the same shall be condemned as enem*ies'* property."

The President of the United States, by proclamation duly made on the 25th day of July, A.D. 1862, issued public warning to all persons contemplated by the said provision, and the sixty days therein specified expired on the 23d day of September, A.D. 1862.

This act had twice at least been the subject of construction in this court. It came up once in *Pelham* v. *Rose*,\* where this court took a distinction between the evidence of a credit and the credit itself; and held that when the debtor had given to his creditor a promissory note, and that note was in existence, *and the thing proceeded against*, it was necessary to the legal service of any monition that the marshal should seize and take it into his possession and control. The corollary was, that when the note, at the commencement of and during the pendence of proceedings to confiscate was beyond the jurisdiction of the marshal, there was no due service and no confiscation.

The same statute came up for consideration at a later date in *Miller* v. *United States*.†

In that case a libel had been filed under the act to confiscate railroad stocks belonging to a rebel, and the notice, in-

---

\* 9 Wallace, 103.                    † 11 Id. 296.

stead of being served on the owner, was served on the officers of the railroad company.

The court held that the service was good. It said:

"The act of Congress made it the duty of the President to cause the seizure of all the estate, property, money, *stocks, credits,* and effects of the persons described, and in order to secure the condemnation and sale of such property after its seizure, directed judicial proceedings *in rem* to be instituted. It contemplated that every kind of property mentioned could be seized effectually in some mode. It had in view not only tangible property, but that which is in action. It named stocks and credits; but it gave no directions respecting the mode of seizure. It is, therefore, a fair conclusion that the mode was intended to be such as is adapted to the nature of the property directed to be seized, and in use in courts of revenue and admiralty. The modes of seizure must vary. Lands cannot be seized as movable chattels may. Actual manucaption cannot be taken of stocks and credits. But it does not follow from this that they are incapable of being seized, within the meaning of the act of Congress. Seizure may be either actual or constructive. . . . Garnishment almost everywhere exists. What is that but substantial attachment. It arrests the property in the hands of the garnishee, interferes with the owner's or creditor's control over it, subjects it to the judgment of the court, and therefore has the effect of a seizure. In all cases where the garnishee is a debtor, or where the garnishment is of stocks, it is effected by serving notice upon the debtor or corporation. A corporation holds its stock as a *quasi* trustee for its stockholders. The service of an attachment, though it is but a notice, binds the debt or the stock in the hands of the garnishee from the time of the service, and thenceforward it is potentially in '*gremio legis.*' The statute declares that proceedings to confiscate shall conform, as nearly as may be, to proceedings in admiralty or revenue cases. Now, it is legitimate in certain proceedings in courts of admiralty, to attach credits and effects of such an intangible nature that they cannot be taken into actual possession by the marshal, and the mode of attachment is by notice, dependent upon statutory enactment."

The court accordingly held that the confiscation and sale had made a valid transfer of the stock.

Under this already mentioned act of Congress, of July 17th, 1862, the United States, in 1863, filed a libel of information in the District Court for the District of Indiana, "against *the following described credits and effects* of Henry Pelham, . . . *that is to say, one promissory note dated March 1st, 1862, for the sum of* $7000, *and due four years after date*, executed by Lewis Pelham to Henry Pelham." Lewis Pelham was still in Indiana, and within the jurisdiction of the marshal; but Henry Pelham was in Kentucky, outside of the marshal's jurisdiction, *and had the note with him there.* The libel, after reciting the act of July 17th, 1862, and making other proper recitals, alleged that "by force of the said statute, and the public warning of the President of the United States, the *said estate, credits, and effects* of him, the said Henry Pelham, so described as aforesaid, became and were forfeited to the United States, and that the same were liable to be condemned as enemies' property."

The writ of monition stated that a libel had been filed by the district attorney against "one promissory note," and commanded the marshal "to attach the note, and to detain the same in your custody until the further order of the court concerning the same," and "to give due notice to all persons claiming the same," &c.

The marshal made return, on the back of the writ, as follows:

"May 2, 1863.

"In obedience to the within warrant, I have arrested *the property within-mentioned*, and have cited all persons having or pretending to have any right, title, or interest therein, as by the said warrant I am commanded to do.

"D. G. ROSE,
"Marshal."

A summons was at the same time issued against Lewis Pelham, the maker of the note, which was served on him by the marshal, and he appeared and answered, admitting the facts alleged in the libel.

The fact of a publication of notice to all other parties in interest was proven, and a decree of condemnation was

made, and a writ of *venditioni exponas* issued to the marshal, who returned that he had offered for sale the promissory note, and sold it to Lewis Pelham for $3000.

Hereupon, the rebellion being suppressed, Henry Pelham sued the sureties of the marshal (he being dead), in the District Court for the District of Kentucky, for damages alleged to have accrued by the marshal's false return in the case. The declaration alleged a false return "to a writ of monition in a libel by the United States against the following described *credits and effects* of Henry Pelham, . . . that is to say, one promissory note for $7000, executed by Lewis Pelham to the said Henry." It was an admitted fact in the case that the note was, from the issuing of the monition in the proceedings for confiscation, till, and at the time of the return to the monition by the marshal that he had arrested the same, outside of the jurisdiction of the said District Court, and not within the territorial limits of the State of Indiana; but, on the contrary, was, during all that time in the possession of the said plaintiff in the State of Kentucky, where he resided.

The plaintiff requested the court to instruct the jury as follows:

"If the jury find, from the evidence, that the allegations of the declaration are true, they will find for the plaintiff, and assess his damages in the amount of the note, with interest thereon from maturity."

The court refused to give this instruction, and, on the contrary, charged that under the conceded facts in the case, the plaintiff was entitled to no more than nominal damages. A verdict was rendered accordingly, and the refusal to charge as requested, and the charge as given, were now assigned for error.

*Messrs. Coburn, Dye, and Harris, for the appellants; Mr. I. B. Niles, contra.*

Mr. Justice STRONG delivered the opinion of the court.

That the errors assigned are unfounded is very plain, if

the record of confiscation in the District Court is not a bar to
the recovery by the plaintiff of the debt formerly due to him
from Lewis Pelham, and which was evidenced by the note
dated March 1, 1862.  The decree in that case is doubtless
conclusive of all matters then adjudicated upon, and, as it
was a proceeding *in rem*, the subject is to be ascertained
from the record, from the information, the monition, and
from the marshal's return.  If they show that the "credit,"
or the debt due from Lewis Pelham to the plaintiff, was
attached, and if the decree was upon the title to that credit,
the plaintiff has been divested of his interest therein, and
divested in consequence of the marshal's false return.  On
the other hand, if the information, the monition to the mar-
shal, his return, the decree of the court, and the marshal's
sale, all relate to another subject, not to the "debt" or
"credit," then the plaintiff has not been divested of the
credit, and he has sustained no appreciable injury in conse-
quence of the falsity of the marshal's return.  Undoubtedly
a debt or a credit was capable of seizure under the confisca-
tion acts, and of subsequent condemnation and sale.  This
we ruled in *Miller* v. *The United States*,\* and we then showed
how property in action could be seized and brought within
the jurisdiction of the court.  But the question here is
whether the debt was seized, or whether the subject of the
seizure, and the consequent libel, was only an evidence of
the debt, a thing capable of actual manipulation and deliv-
ery.  That it was the latter an inspection of the record, and
the decision of this court in *Pelham* v. *Rose*,† sufficiently
establish.  The libel was against a promissory note, particu-
larly describing it, and it was that, not the debt of which it
was evidence, that was claimed to have been forfeited.  The
monition was against the promissory note, and nothing else.
The marshal was commanded to attach the note and detain
the same in his custody.  It made no allusion to any right
in action.  The marshal's return was that he had arrested
the property (described in the monition).  The decree of

\* 11 Wallace, 268.        † 9 Id. 103.

the court was that the note should be exposed to sale, and the sale was of the property mentioned in the libel and in the decree. Plainly, a debt is distinguishable from any instrument of evidence of the debt. This was the view taken of the case in *Pelham* v. *Rose.* The language of this court then was as follows: "In the case at bar a visible thing, capable of physical possession, is the subject of the libel. It is the promissory note of Pelham which constitutes the *res* against which the proceeding is instituted, and not a 'credit,' or debt, which the note is supposed by the defendant's counsel to represent." For this reason it was held that to effect its seizure it was necessary for the marshal to take the note into his actual custody and control. That case determined that the arrest returned by the marshal was not a seizure of the debt, and consequently the debt was not confiscated. It follows that the plaintiff has shown no injury sustained by him which entitles him to more than nominal damages.

JUDGMENT AFFIRMED.